Judge Robertson,
delivered the opinion of the Court
James- Wistn sold to William Meek two hundred acres of land, and on the 23d of November, 1803, executed to him a bond, for the conveyance of the legal title.
Meek settled on the land, and having made valuable and lasting improvements upon it, sold it in 1804, to James Bradshaw, for £250, and assigned to him, Winn’s bond for a title.
Brpdshaw, having also made some inconsiderable improvements orí the land, died intestate, leaving his son William in possession, who administered on Jsis estate.
In 18.15, John Harvie and others, brought an action of ejectment, against William Bradshaw, for the land, and in 1818,. recovered a judgment.
*78 Commissioners having been appointed to value the" improvements, assessed them at $632 20 cents; for which, John Rice and John Culver, as sureties for the successful party, executed two joint bonds, each for one moiety.
To indemnify Bradshaw, for an eviction, by a paramount title, if it should ever occur, Meek gave him his bond on the 22d of March, 1804, to “refund the said sum of money,- (£250) from the date hereof.i”
Meek having died intestate, John Craycraft, his administrator, filed a bill in chancery, on the 28th of April, 1820, against William- Bradshaw, and Rice, and Culver, alleging, that he had discharged the bond for £250; that He was entitled to the amount,-which Bradshaw had been allowed for the-improvements,' which had been made-by William Meek; that William Bradshaw had removed from the state; and, therefore, praying for an injunction, to restrain the payment of their bonds, by Rice and Culver, and for a final decree, for the amount, which William Bradshaw might, in equity, be liable to pay, and for á surrender of Winn’s title bond.
■ Bradshaw answered the bill. The answer does not respond to the allegation of removal. It asserts, that Craycraft paid him only a part of the £250; that he gave him a note on his intestate, J. Bradshaw, for $100, due on the 1st day of January, 1808; and’ another note on Fuqua, for *$117' 50 cents, due on the 1st day of September, 1819: which two notes he accepted, in discharge of the bond, for £250, because, Craycraft averred, that James Bradshaw had paid only between seventy and eighty pounds of the consideration, for the land; and because, not knowing whether he could coerce any thing, if the whole had not been paid, he deemed it prudent to take whatever, was offered.
He claims a . credit for costs, legal and extraordinary, expended in defending the ejectment, and makes his answer a cross bill.
In answer to the cross bill, .Craycraft asserts, that when he took up the bond for £250, he held a bond from James Bradshaw, to Willigm Meek,- for about £167 *79 10, which remained due, and which, on the settle* ment, he surrendered to W. Bradshaw, and calls on him to exhibit it, if he shall deny the; allegation, in relation to it.
Where vendor and ven-dee have fixed amount to be refunded by vendor, in case land be lost, that am’t cannot be enlarged, by costs incurred by vendee, in defending title, nor diminished by charge fpv rents-
The circuit court decreed that William Bradshaw, was entitled to £30 more, on the bond for £250, than what he had received; and that Craycraft was entitled to the value of the improvements, which had been made by Meek.
Commissioners, appointed for the purpose,-assessed these improvements to $>422 75 cents, which the court approved; and, thereupon, after crediting the $100,. which had been allowed to Bradshaw, for a supposed deficit in the payment, on the £250, the court decreed that Rice and Culver should pay the remainder, ($>325 75) to Craycraft, and that Bradshaw should pay the costs. To reverse which decree, Bradshaw has prosecuted this writ of error.
As the plaintiff in error was the defendant in the ejectment, and as the bonds for improvements, were made payable to him, and he received what was paid on the bond for £250, it was proper to make him a defendant; and it was not necessary to make the heirs of J. Bradshaw parties, if he had heirs.
Meek and Bradshaw having, by express contract, fixed the extent of responsibility, -for the loss of the land, the amount designated by them, cannot be enlarged, by the costs incurred, in the defence of the ejectment, nor diminished by a charge for rents. £250, with interest from the date of the bond, would be the only criterion of right between the parties, if the whole consideration had been paid at that time. But it is very clear, that the £250, had not been fully paid; and therefore, the equitable criterion, will be the amount which was paid, with legal interest upon it, from the date of payment.
There are some circumstances, which render it not improbable, that the parties intended that interest should not be charged, but that the occupancy of the land, should be considered as equivalent to the interest on the price.
The legal construction of the bond, however, is, that interest shall be paid; and whatever may have *80 been the understanding of the contracting parties, there being no evidence sufficient to counteract the effect of the bond, it cannot be judicially questioned, that interest must follow the principal.
■Where vendor and ven-dee have fix- • ed amount to be refunded by vendor, in case land is lost, vendor will be entitled to am’t. assessed against successful claimant, for improvements made by vendor.
Although, the amount which bad been paid by J. Bradshaw to Meek, is not ascertained with a precision, perfectly satisfactory, the facts, as they appear,' incline strongly, to the conclusion, that only £79 10, had ever been paid. It is not even shewn certainly, when.this sum was paid. But all the circumstances, when fairly interpreted, according to the principles of reason ando/ law, would establish the date of the bond, as the timé of payment.
The plaintiff was, therefore, entitled to £79 10, with six per cent, interest thereon, from the 20th of March, 1804. This will exceed what he received, by an amount, greater than £30.' As the notes which he received, have been collected, or are admitted to be collectable, he should be charged with their principal and interest, up to the time of the decree, if the settlement can be renounced. But if it shall not be disturbed, there can be no revision of the calculation.
Being entitled to the amount, which had been paid for the land, and legal interest upon it, the plaintiff should not, also, receive and retain, the amount assigned for improvements, which Meek made on the land. This belongs, in equity, to Meek’s representatives, and as the value of these improvements, thus became equitably vested in the defendant, he is entitled to the amount at which they were assessed by the commissioners. He cannot be entitled to less, because the plaintiff, by taking his recourse on the bond for £250, has w'aived all right to- the value of the improvements, which were made by Meek, and consequently, has no right, in equity, to any portion of their assessed value; and the defendant should not recover more than the value assessed in the ejectment suit, because, the successful party is responsible for no more, and the plaintiff ought not to be held liable for more than he received, or may be entitled to receive.
But the circuit court, and commissioners appointed by its interlocutory decree, disregarded this rule of right between the parties. The commissioners were *81 directed to estimate, aivd did' accordingly, value the improvements, at 'what they supposed they were worth, when made.. Hence; in some items, exceeded the valuation of the former commissioners, and, in others they did not come up to it. In the ejectment, $¡16 an acre, were allowed fiar clearing land. In the report in this case, only É12 an acre, are charged. * .
Although decree of infe- ■ rior court be erroneous in some of its parts, yet, if aggregate result be inore favorable to pl’tff. in error than it should be. he is not entitled to reversal.
In the ejectment, all the houses on the land, were estimated at $¡100. In this case, they are valued at $192. Notwithstanding these discrepancies in the details, the aggregate amounts of the two-assessments are nearly the same. The difference between them is inconsiderable, but there is a difference to the prejudice of the plaintiff". The assessment of the first commissioners was $'407 .43 cents. That of the last was $422 75 cents.
. It would seem to result, therefore, that the circuit court erred in its estimate of the amount, which the .plaintiff had a right to exact, on the £2ó0bond; and in its decree for the improvements.
But notwithstanding tbeseerrors, if the aggregate result be more favorable to the plaintiff in error, than it should have been, he is not entitled to a reversal of the decree.
There can be no doubt, that the whole of the consideration had not been paid. It is most probable, as before stated, that only £79 10, had been paid. The plaintiff and defendant in error, mfistbe presumed to have known the true amount, when they made their settlement. They seem to have considered it about £79 10. If they calculated interest, they must have assumed, that the principal was something less; but if they did not calculate interest, it must be admitted to be something more than £79 10. As already-suggested, it is quite probable, that the understanding of the original contracting parties, was, that rent should be setoff against interest-. The plaintiff and defendant had a right to settle this .matter. rJ£hey have done so, and there is no evidence of any fraud or mistake in the settlement. It is somewhat doubtful, whether more was due, according to the letter of *82 t{,e bond, than what the plaintiff received; and it Is certain, that more was paid, than was due, unless the contracting parties intended that interest should be paid, and that rentsbould not be accounted for.
'Settlement of a matter, by parties, is eon-conclusive, set aside^by proof of fraud for mistake.
Ml Connell, for plaintiff.
The settlement should, therefore, conclude further controversy on this subject, unless it could be set agj<Je by proof of fraud or mistake. There is no r Y c ... Pro°f whatever, of either.
The circuit court allowed the plaintiff in error $ 100, more than tvhat he had received, and, therefore, to this extent, erred to the prejudice of the defendant. And it will be instantly perceived, that if the settlement had not been disregarded, the decree must have been less favorable to the plaintiff than it is. Regarding the settlement as conclusive, the defendant, was entitled to a decree Tor the whole value of the improvements which had been made by Meek, which is $407 43 cents. But the court, by crediting the assessment for the improvements, with $100, which were improperly allowed the plaintiff, as a balance due on the bond, reduced the sum to $322 75 cents.
As, therefore, the decree is for less than the defendant in error was entitled to, it cannotbe reversed at the instance of the plaintiff, who instead of being a loser, is a gainer by it.
The defendant might have procured a reversal, if lie had complained. The court erred to his prejudice, by decreeing an insufficient sum, and in omitting to decree a re-assignment, and the surrender of the bond on Winn for a title.
Wherefore, as there is no error to the prejudice of the plaintiff, and the defendant has acquiesced, the decree of the circuit court is affirmed. •